**Derived from Official Form 425A (02/20)**

# United States Bankruptcy Court
## Western District of Texas
## San Antonio Division

In re:

Trinity Pharmacies, LLC                                  Case No. 24-50144 -CAG

Debtor                                                                  Chapter 11

### TRINITY PHARMACIES, LLC
### PLAN OF REORGANIZATION FOR A SMALL
### <u>BUSINESS UNDER SUBCHAPER V OF CHAPTER 11</u>
### [DATED MAY 6, 2024]

Comes now, Trinity Pharmacies, LLC, which files its Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 (the "Plan"), pursuant to 11 U.S.C. § 1189-1190.

## BACKGROUND

**A.      Description and History of Debtor's Business**

The Debtor was formed in October, 2007. Prior to, and after the filing of this Chapter 11 case, the Debtor has conducted business as a pharmacy with a single location in North Central San Antonio. Debtor has 15 employees and conducts business out of its single location at 1162 E. Sonterra Blvd., #100, San Antonio, Texas. The Debtor leases the space and rent payments are current.

*Financial Information*

Debtor does not own any real estate. Debtor's primary assets at the time of filing consisted of approximately $188,355.01 in collectible accounts receivable and $49,733.31 in prescription drug inventory, both of which amounts adjust daily. Debtor's furniture, fixtures and equipment are valued $13,796.16 plus $38,000.00 for a single piece of equipment (a dispensing device known as the "Robotix" system) which is financed by the lender providing the purchase money for the equipment. Debtor does not own any vehicles.

Debtor is not required to collect sales taxes and is current on its ad valorem property taxes and payroll taxes. The Internal Revenue Service filed an estimated claim in the case for $4,538.36 priority, and $19,801.27 general unsecured.

The Debtor carries all the appropriate insurances required for the type of business it is engaged in and will continue to do so.

*Reasons for Filing Bankruptcy*

Debtor's financial difficulties began when it was required to take out two merchant loans with Austin Business Finance and On Deck Capital, Inc. in January, 2022. The Debtor fell into default on such loans due to cash flow issues with the business and the interest charges on the loans, and both lenders filed suit against the Debtor. The Debtor employed counsel and resolved both lawsuits, pre-petition, with settlement agreements. The Debtor completed its settlement with Austin Business Finance in August, 2023, but still owed On Deck more than 100,000 as of the Petition Date.

In addition, on August 5, 2022, the Debtor was added as a named Defendant in a lawsuit which is part of the Purdue Pharma L.P. multidistrict litigation, and more specifically, in a case brought by Bexar County in state district court. In this litigation, Bexar County sued not only the manufacturers of opioid medications, but also added wholesalers and major retailers as defendants. Approximately 99% of the prescriptions filled by the Debtor are for patients who are in hospice care. As such, the prescriptions being filled are for an abnormally high percentage of pain management medications. It is believed that because of this fact, the Debtor was added to the lawsuit despite its single location, limited resources, and the nature of the patients which are the Debtor's customers. The Debtor is a small independent pharmacy which cannot sustain protracted and expensive litigation, despite having meritorious defenses to the claims asserted in the litigation, and particularly when being included in the middle of the multiparty litigation pending in state court where the costs were considerably higher due to the number of parties involved. Therefore, the Debtor filed this case to prevent it from having to cease operations due to the inability to be able to continue to finance the defense of the claims while also meeting its expenses necessary for the operation of the business.

**B.    Liquidation Analysis**

Under sections 1191 and 1129(a)(7) of the Bankruptcy Code a plan can be confirmed without the accepting votes of impaired classes of claims as long as each such class would receive under the plan "not less than" they would receive "if the debtor were liquidated under chapter 7." Therefore, to confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. To assist in this evaluation, Debtor attaches a Liquidation Analysis to this Plan as Exhibit "A" hereto. A review of this analysis demonstrates that if the Debtor were liquidated in a Chapter 7 case, there would nothing left to pay to unsecured creditors after paying creditors holding liens against the Debtor's assets, and paying administrative and priority claims. Further, if this case were converted to Chapter 7 case and the assets of the Debtor liquidated, such a liquidation would destroy any going-concern value of the Debtor's business because it would require the cessation of business operations and default on customer service agreements which would destroy the goodwill of the company. The Debtor would not be able to fulfill its commitments to its customers and would default, resulting in the filing of claims against the estate by the Debtor's customers. In fact, in a Chapter 7 case, there would not even be sufficient asset value to pay the Debtor's secured

creditors, leaving other creditors and equity interest holders to receive nothing on account of their claims and interest. Therefore, all creditors are better off under the Debtor's proposed Plan.

**C.      Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. In this regard, Debtor has provided projected financial information as Exhibit "B" hereto.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $34,607.52. The Debtor's projections demonstrate the disposable income paid on a yearly basis to the Holders of claims in Class 6 are attached as Exhibit "B" under the row entitled "Yearly Disposable Income Calculation".

The final Plan payment is expected to be paid in or around July, 2027.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the Plan) under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Trinity Pharmacies, LLC (the "Debtor") from the cash flow generated from the operations of the company and its future income.

This Plan provides for:  1 classes of priority claims;
4 classes of secured claims;
2 classes of non-priority unsecured claims; and
1 class of equity security holders.

It is estimated that non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 2.1 cents on the dollar. This Plan also provides for the payment of administrative and priority claims as required by law and as provided herein.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     **Claims and Equity Interests Classified**. In order to make this Plan easier to understand, to aid in the Plan balloting process, and for all confirmation matters, all Claims (except certain Priority Non-Tax Claims and Priority Tax Claims) and Equity Interests shall be classified as set forth in this Article II of the Plan.

2.2     **Priority Claims and Priority Tax Claims.** Section 1123(a)(1) of the Bankruptcy Code provides that certain Priority Non-Tax Claims (*i.e.* priority claims that are not administrative expense claims under § 507(a)(2) or "gap" period claims in an involuntary case under § 507(a)(3) and Priority Tax Claims under § 507(a)(8), shall not be classified for purposes of voting or receiving distributions under the Plan. All such Claims are to be treated separately as unclassified Claims on the terms set forth in Article III of the Plan.

2.3     **Classes of Claims and Equity Interests.** The Plan classifies Claims and Equity Interests as follows:

| Class | Designation | Impairment? | Entitled to Vote? |
|-------|-------------|-------------|-------------------|
| N/A | Priority Tax Claims and Administrative Claims | N/A | No |
| 1. | All allowed claims entitled to priority under § 507(a)(4) of the Bankruptcy Code | Yes | No (insiders) |
| 2. | Secured Claim of Bexar County (Property Tax Authorities) | No | No (deemed to accept) |
| 3. | Secured Claim of Americorp Financial, LLC | No | No |
| 4. | Secured Claim of On Deck Capital, Inc. | Yes | Yes |
| 5. | Secured Claim of American Bank | No | No |
| 6. | Unsecured Claims (non-insiders) | Yes | Yes |
| 7. | Unsecured Claims of Insiders | Yes | No (insiders) |
| 8. | Equity Holders | No | No (insiders) |

2.4     **Impairment Controversies**. All controversies as to whether a Class of Claims or Equity Interests are impaired under the Plan shall be resolved by the Bankruptcy Court after notice and hearing.

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

3.01    <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, "gap" period claims in an involuntary case allowed under § 502(f) of the Code, and priority tax claims are not in specific classes.

3.02    Administrative Expense Claims.

All Administrative Expense Claims against the Debtor shall be treated as follows:

Time for Filing. All Holders of Administrative Expense Claims, other than Professional Persons holding Professional Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtor, its' counsel and all parties requesting notice in the Bankruptcy Case, and must, at a minimum, set forth (i) the name of the Holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its Holder forever barred from asserting such Administrative Expense Claim against the Debtor or the Reorganized Debtor.

Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

Professional Fee Claims. Every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is sixty (60) days after the Effective Date; provided, however, that a Professional Person may supplement its request up to and including the date of the hearing on such request to account for fees and expenses incurred following the Effective Date in connection with, among other things, preparation of the request for allowance of such Professional Fee Claim, attendance at the hearing thereon and any other allowable fees or expenses not previously requested.  Upon approval of such applications by the Bankruptcy Court, the Claims will be deemed Allowed Professional Fee Claims which shall be paid as provided below.

Payment.

Each Holder of an administrative expense claim allowed under § 503 of the Code will be paid as follows:

(A). In the event this Plan is confirmed consensually under section 1191(a): Each Holder of an Allowed Administrative Expense Claim shall be paid the full amount of their Allowed Claim(s) on the Effective Date of this Plan (as defined in Article VIII below), in cash, or upon such other terms as may be agreed upon by the Holder(s) of such Claim(s) and the Debtor.

(B). In the event this Plan is confirmed non-consensually under section 1191(b): Each Holder of an Allowed Administrative Expense Claim shall be paid the full amount of their Allowed Claim(s) in cash during the term of the Plan, as follows:

(1)    Payments of Professional Fee Claims shall be paid in full in Cash by the Reorganized Debtor from Cash on hand or from operating Cash flow as funds are available, or on a pro rata basis by the Debtor from the monthly payment allocated for payment of such sums according to the payment schedule attached hereto as Exhibit "B", and referenced as "Professional Fees", or upon such terms as may be agreed upon by the Debtor and the Holder(s) of such Claim(s); and

Estimated Administrative Expense Claims currently are as follows:

A.    Law Office of H. Anthony Hervol - $5,500.00 (estimated, after application of remaining pre-petition retainer) - paid as provided in an order approving such fees entered by the Court, or as agreed upon between attorney and the Debtor.

B.    Subchapter V Trustee Fees – An administrative expense claim for the services of the Subchapter V Trustee in this case shall be allowed as provided by order of the Court in connection with the Trustee's application seeking an award of such fees and expenses.

3.03    <u>Priority Tax Claims</u>.  Each Holder of a Priority Tax Claim (*i.e.* of a kind provided by §507(a)(8) of the Code), the extent such claim is Allowed, will be paid consistent with § 1129(a)(9)(C) of the Code.  Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtor over a period not exceeding five (5) years from the Petition Date. Payments by Reorganized Debtor provided for herein shall be made in equal monthly installments with the first payment due on the later of the fifteenth Business Day of the first month following the Effective Date of this Plan, or the date on which such claims(s) is/are allowed by a final non-appealable order.  Interest shall accrue on the Priority Tax Claim in accordance with section 511 of the Bankruptcy Code. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. To the extent the Holder of an Allowed Priority Tax Claim has a Lien on the Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

The following Priority Tax Claims have been filed in this case:

Internal Revenue Service - $4,538.36 (Claim No. 3-1). If Debtor is not able to pay the entire amount of the IRS's Allowed Priority Claim on the Effective Date, then Debtor shall pay the full amount of such claim over 54 months from the Effective Date, with interest accruing thereon at the statutory rate of 8.0% per annum until paid in full.

3.04    Priority Non-Tax Claims

Pursuant to 11 U.S.C. §1129(a)(9)(B), each Holder of a claim allowed under 507(a)(4) or 507(a)(5) shall be paid the full amount of his/her Allowed Priority Claim.  In this case, there are two holders of such priority non-tax claims, who are both insiders owed pre-petition wages for earned within 180 days prior to the Petition Date:

(A).    Larry Oliver in the amount of $11,538.48; and
(B).    Debra Oliver in the amount of $12,115.40.

These Creditors' non-tax priority claims are classified under Class 1 below.

3.05    Statutory Fees.  All fees required to be paid under 28 U.S.C. §1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. Because this case was filed under Subchapter V of Chapter 11, there are no quarterly U.S. Trustee Fees owed.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Allowed Priority Claims under 507(a)(4) – Wage Claims | Impaired | Class 1 consists of the claims of Insiders who are owed pre-petition wages for the time period 180 days prior to the Petition Date. Payment of such claims shall be subordinated and not paid unless all Allowed Claims in Class 2 through 6 are paid full.  The Class 1 creditors are impaired but are not entitled to vote as they are insiders. |
| Class 2 – Allowed Secured Claim of Bexar County | Unimpaired | To the extent it has not already been paid prior to the Effective Date, the Allowed Secured Claim of Bexar County shall be paid in full in Cash within the later of thirty (30) days after the Effective Date or the due date for such taxes provided by law. |
| Class 3 – Allowed Secured Claim Americorp Financial, LLC ("Americorp") | Unimpaired | Americorp Financial, LLC has an Allowed Secured Claim which is secured by a purchase money security interest in a Kirby Lester, LLC, KL100 Robotix dispensing device.  Americorp shall be paid its Allowed Secured Claim as follows: (A). the Debtor will continue making the monthly payments to Americorp required under the Equipment Finance Agreement executed by the Debtor and Americorp; and (B). Americorp shall retain its lien upon the |

| | | equipment until its Allowed Secured Claim is paid in full. |
|---|---|---|
| Class 4 – Allowed Secured Claim of ODK Capital, LLC ("ODK"), (secured by all unencumbered assets) | Impaired | ODK shall be paid in satisfaction of its Allowed Secured Claim the following: (A). The sum of $145,000.00 as provided in the settlement agreements between the Debtor and ODK dated November, 2023 and 1/24/24 (the "Settlement Agreement"), less the sum of the $4,500.00 monthly payments paid to ODK through the Effective Date; (B). On the Effective Date, the remaining balance due to ODK under the Settlement Agreement shall be amortized over period of time which provides for continued payments by the Debtor of $4,500.00 per month until the remaining balance due is paid in full, with interest accruing on such remaining balance at the rate of 8.75%; (C). The payment terms under this Plan shall modify the terms of the Settlement Agreement; and (D). ODK shall retain its liens until the foregoing sums are paid in full. |
| Class 5 – Allowed Secured Claim of American Bank (Debtor is guarantor only, debt secured by assets not owned by Debtor) | Not Impaired | The Class 5 claim of American Bank is a contingent claim premised in the Debtor's liability as a guarantor for a debt owed by the Debtor's members (the "Guarantors"). The Guarantors shall continue to make the payments to American Bank required under the loan documents executed with the bank. |
| Class 6 – Allowed Unsecured Claims of Non-Insiders | Impaired | The Debtor shall set aside the cumulative amounts identified as "Yearly Disposable Income Calculation" shown in Exhibit "B" attached hereto, during the period of time which is thirty-six (36) months from the Effective Date of the Plan, which shall be known as the "General Unsecured Creditor Fund". The Debtor shall make the annual payment due to this fund on or before the 12th, 24th and 36th months following the Effective Date of the Plan. All Creditors holding Allowed Unsecured Claims (other than the Debtors equity members) shall be paid a Pro Rata share of the funds deposited in the General Unsecured Creditor Fund on an annual basis, with each payment being due on the yearly anniversary of the Effective Date. |
| Class 7 – Allowed Unsecured Claims of Insiders | Impaired | The Allowed Unsecured Claims due and owing to Larry Oliver and Debra Oliver shall be subordinated to the payment of all creditors holding Allowed Claims in Class 6 above. Unless all of the Creditors holding |

| | | Allowed Unsecured Claims in Class 6 are paid in full, the Class 7 creditors shall receive not payment on their Allowed Unsecured Claims. |
|---|---|---|
| Class 8 – Equity Members | Not Impaired | The Class 8 Equity Members shall retain their interests in the Debtor. |

4.02    Resolution of the contingent claim filed by Bexar County – Proof of Claim No. 5 is an unliquidated claim filed on behalf of Bexar County asserting liability against the Debtor for claims asserted in the 224th Judicial District, Bexar County, Texas.  The Allowed Amount of such claim shall be determined as follows: (1). Without prejudice to either parties' rights, if Bexar County and the Debtor enter into an agreement fixing the Allowed Amount of such Claim, Debtor shall file a motion pursuant to Fed. R. Bankr. P. 9019 seeking approval of the agreed upon amount, and if the Court approves the agreement, such sum shall be the Allowed Amount of Bexar County's Claim; (2). If the Debtor and Bexar County cannot agree upon an Allowed Amount, Debtor shall file an objection to Bexar County's claim within 60 days of the Effective Date.  The Debtor shall move to invoke the adversary rules in connection with such objection.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Claims on File. The Debtor is relying upon the formal Proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal Proofs of Claim shall be deemed to have been filed in this Chapter 11 Case. No informal amendment, modification or supplementation shall be deemed filed in this Chapter 11 Case. No Proofs of Claim may be filed, amended, modified, or supplemented after the Confirmation Date without the consent of the Debtor.  Any filing prohibited by this paragraph shall be void.

5.02    Objections to Claims. Except as is otherwise provided for with respect to Professional Fees or as otherwise ordered by the Bankruptcy Court, objections to Claims and Equity Interests shall be prosecuted as follows:

A.    Pre-Effective Date Objections - Prior to the Effective Date, any party entitled to do so under the Bankruptcy Code or order of the Court may file and prosecute objections to Claims. The failure of the Debtor prior to Confirmation to object to a Claim for purposes of voting on the Plan shall in no way be deemed to be a waiver of the right of Reorganized Debtor to object to such Claim in whole or in part.

B.    Post Effective Date Objections - After the Effective Date, objections to Claims and Equity Interests may be made exclusively by the Reorganized Debtor. Objections to Claims and Equity Interests shall be made as soon as practicable, but in no event later than sixty (60) days after the Effective Date (unless otherwise ordered by the Bankruptcy Court). The filing, prosecution, settlement, or withdrawal of all objections to

Claims and Equity Interests filed after the Effective Date are reserved to the sound discretion of Reorganized Debtor.

5.03 <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed, or hereafter files, an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.04 <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.05 <u>Settlement of Disputed Claims</u>. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.06 <u>Bar Date and Allowance of Unfiled Claims</u>. The deadline for creditors to file claims in this case expired on April 12, 2023. Creditors who did not timely file a proof of claim on or before such date may still have an allowed claim in the amount scheduled by the Debtor, and may receive a distribution in this case pursuant to the terms of this Plan if: (A). such creditors' claims were listed in the Debtor's Schedules, but not listed as disputed, contingent or unliquidated, and (B). neither the Debtor nor other party-in-interest obtains an order disallowing the claim or allowing the claim in an amount which differs from the amount scheduled by the Debtor.

5.07 <u>Disallowance of Contingent, Unliquidated and Disputed Claims</u>. Any creditors of the Debtor and its Bankruptcy Estate who: (A). were scheduled by the Debtor as holding a contingent, unliquidated and/or disputed claim, and (B). failed to timely file a proof of claim with the United States Bankruptcy Clerk for the Western District of Texas, San Antonio Division, shall be barred from receiving a distribution in this case and the Discharge set forth in Article IX below shall apply to each such creditor notwithstanding the fact that no distribution shall be made to such creditor(s).

5.08 <u>Bar Date for Newly Added Creditors</u>. Any creditors and parties-in-interest added to this case by the Debtor through the filing of an amended creditor matrix up until the date of entry of an Order confirming this Plan of Reorganization (hereinafter known as "Newly Added Creditors"), shall have a supplemental bar date to file proofs of claim in this case. Newly Added Creditors shall have until 45 days from the date of entry of an Order confirming this Plan of Reorganization (the "Supplemental Bar Date") to file a proof of claim in this case with the United States Bankruptcy Clerk for the Western District of Texas, San Antonio Division. The Debtor and any parties-in-interest may file objections to such claim(s). Any Newly Added Creditors who fail to file a proof of claim on or before the Supplemental Bar Date shall be barred from receiving a distribution in this case other than as a creditor holding a claim scheduled as non-contingent, not disputed and liquidated, and the Discharge set forth in Article IX below shall

apply to each such creditor notwithstanding the fact that no distribution shall be made to such creditor(s). In the event a claim is timely filed by a Newly Added Creditor, the Reorganized Debtor shall have 30 days from the date the claim is filed to file an objection to such claim.

5.09    Determination of Secured Status. Any Creditor claiming a security interest in an asset or assets of the Debtor shall be bound by their treatment set forth herein. The total value of a Creditor's collateral shall be fixed by this Plan, and no separate adversary proceeding shall be required to obtain a determination of the validity, extent or priority of any Creditors' lien(s). Any Creditor which has filed a fully secured or partially secured proof of claim herein shall have instead an Allowed Unsecured Claim unless it is treated as a fully secured or partially secured creditor in Article IV above. Furthermore, a Creditor which failed to timely file a proof of claim in this case shall be deemed to have no security interest in any of the Debtor's or Reorganized Debtor's assets after the deadline set by the Court for filing objections to the confirmation of this Plan.

5.10    Disallowance of Penalties and Fines. Except as provided for in the Plan, no distribution shall be made under this Plan on account of, and no Allowed Claim shall include, any fine, penalty or exemplary or punitive damages relating to or arising from any default or breach by the Debtor, and any Claim on account of such fine, penalty, or exemplary or punitive damages shall be deemed disallowed, whether or not an objection is filed to such Claim.

5.11    Interest on Claims. Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan or when an order approving such assumption is entered with the Court: (1). all contracts for services with its clients, (2). Commercial real estate lease with Larry and Debra Oliver; (3). Merchant services agreement with Clover; and (4). Any service contracts with existing software and internet service providers.

6.02    Rejected Executory Contracts or Leases.

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed previously by order of the Court or specifically listed under section 6.01(a) above, or pursuant to an application filed before the date of the order

confirming this Plan, upon the Effective Date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    Means. This Plan is based upon the distributions to Creditors by the Debtor, at its option, by means of one or more of the following: (a) cash presently held by the Debtor and cash to be acquired through the operation of its business including cash generated from the contracts the Debtor is currently under and those contracts that the Debtor may enter into at a later date; and (b) collection of any accounts receivable.

7.2    Continued Existence. Debtor shall continue to exist as Reorganized Debtor after the Effective Date with its current officer, Larry P. Oliver, continuing to operate the company.

7.3    Operations of Reorganized Debtor. After the Effective Date, the Reorganized Debtor shall continue in business and shall carry on its business affairs without consultation or approval from the Bankruptcy Court or the Creditors. The Reorganized Debtor shall be free to use or sell its assets, hire, and compensate Professionals and otherwise operate free of the restrictions, limitations and constraints existing under the Code. The Reorganized Debtor shall operate in conformity with the Plan and shall make distributions to Creditors timely and in accordance with the Plan.

7.4    Free and Clear Sale Authorized.  The members of the Debtor shall be authorized to sell the Debtor or the assets of the Debtor to a buyer after the Effective Date, without further order of the Court, so long as the consideration received is sufficient to pay at least all sums due under this Plan.  For purposes of such sale, the sums due under this Plan shall be: (A). for each Allowed Claim in Classes 2 through 4, the balances due as of the closing date of the sale, including any interest which has accrued through such closing date; and (B). For each Allowed Claims in other class 6, the pro rata amounts due to such creditors under this Plan which is shown as the Yearly Disposable Income Calculation on Exhibit "B" attached hereto. Such sale shall be deemed to be free and clear of all liens, encumbrances, claims and interests as if the sale had occurred pursuant to §363(f) of the Bankruptcy Code.

7.5    Vesting of Assets. Unless this Plan is confirmed under 1191(b), on the Effective Date, all Property of the Estate of the Debtor, including, but not limited to any rights or causes of action, whether under the Bankruptcy Code or any other applicable law, shall vest in Reorganized Debtor. Claims and causes of action shall include, but not be limited to the Litigation Claims referenced herein.  If a plan is confirmed under 1191(b), all Property shall not vest with the Reorganized Debtor until all plan payments have been made. Upon any conversion of the Bankruptcy Case to Chapter 7, all assets vesting in Reorganized Debtor shall pass to the Chapter 7 trustee as property of the Chapter 7 Bankruptcy Estate.

7.6 <u>Preservation of Debtor's Claims</u>. Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, or which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate and shall be conveyed to Reorganized Debtor on the Effective Date. The Court shall retain jurisdiction to determine all such causes of action.

7.7 <u>Preservation of Insurance</u>. Nothing in this Plan, including the discharge or release of the Debtor provided in this Plan, shall diminish or impair the enforceability of any insurance policies that may cover any Claims against the Debtor, the Reorganized Debtor or any member, officer, director, agent, professional, financial advisor or other Person covered by any insurance policy maintained by the Debtor.

7.8 <u>Release of Liens</u>. Except as otherwise provided in the Plan for Classes 2 through 5, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, all mortgages, deeds of trust, Liens, UCC filings, or other security interests against the Property of the Estate and the Debtor's Assets shall be released on the Effective Date.

7.9 <u>Exemption from Stamp or Similar Taxes</u>. In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer or exchange of Reorganized Debtor Common Stock or other Estate Property; (b) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, on in connection with, this Plan or the Confirmation Order; (c) the making, assignment, modification or recording of any lease or sublease; or (d) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated by any of the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax or stamp act or real estate transfer or mortgage recording tax, or any governmental assessment. The appropriate state or local government officials or agents shall be directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

7.10 <u>Recordable Order</u>. Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders when certified by the Clerk of the Bankruptcy Court.

7.11 <u>Effectuating Documents and Further Transactions</u>. The President and/or other authorized officer(s) of the Debtor and/or Reorganized Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.12    <u>Advance Payment of Claims</u>. Debtor may make advance payments on claims in Debtor's business judgment and discretion, but must stay current on payments to all other creditors pursuant to the Plan.

7.13    <u>Consensual post-confirmation modification of plan terms</u>.  Notwithstanding any provision set forth in this Plan, the Debtor and any particular Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives, does not provide for treatment which provides a pro rata recovery under this Plan better than the creditors in the same class, does not reduce the amount or delay the timing of payments to any other Creditor, and is consented to by the Trustee in the exercise of his reasonable business and legal judgment, in the event of confirmation under Code Section 119l(b). Any such modified agreement(s) shall be deemed to supersede the terms of this Plan.

**ARTICLE VIII**
**<u>GENERAL PROVISIONS</u>**

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions provided within this Plan, and by the following definitions:

<u>Adversary Proceeding</u> - means a lawsuit involving the Debtor in any manner, either commenced in the Bankruptcy Court, removed, referred or transferred to the Bankruptcy Court, and any action that may be consolidated with such proceeding in the future.

<u>Administrative Expense Claim</u> - means a Claim for costs and expenses of administration of the Chapter 11 Case allowed under Sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred prior to the entry of a Final Decree herein; and (c) all fees and charges assessed against the Debtor's Estate under Section 1930, chapter 123 of title 28 of the United States Code.

<u>"Allowed" Claim or "Allowed" Interest</u> - shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to

which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

Assets - means all (a) assets, property, interests and effects, real and personal, tangible and intangible, including but not limited to all Cash, real property interests, fixtures, equipment, furniture, other tangible property, accounts receivable, tax refunds, contract rights, other intangible property, causes of action, claims and rights of any kind of the Debtor, including any property of the Estate for purposes of Section 541 of the Bankruptcy Code and any causes of action potentially arising under chapter 5 of the Bankruptcy Code and any proceeds therefrom, and (b) proceeds, products, rents and profits of all of the foregoing.

Avoidance Actions - shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

Bankruptcy Code - shall mean the Bankruptcy Code, 11 U.S.C. §101 et seq., as it existed on the Filing Date.

Bankruptcy Court - shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

Bankruptcy Estate - shall mean all of the assets owned by the Debtor and its estate.

Bar Date - The deadline for creditors to file claims in this case, which expired on April 15, 2024.

Cash - shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

Claim - shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

Class - shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IV above.

Confirmation Date - shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

Confirmation Hearing - shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

Confirmation Order - shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

Creditor shall mean any entity holding a Claim.

Debtor - shall mean Trinity Pharmacies, LLC.

Disbursing Agent - shall mean either of the Debtor's President or the Subchapter V Trustee, as applicable. The Disbursing Agent will make the payments required under this Plan. Unless otherwise specifically provided herein or in an Order confirming this Plan, the Debtor's President shall be the Disbursing Agent for all payments due under this Plan if the Plan is confirmed as a consensual Plan. If the Plan is confirmed as a non-consensual Plan, then unless otherwise specifically provided herein or in an Order confirming this Plan, the Subchapter V Trustee shall be the Disbursing Agent for sums due to Creditors holding Allowed Claims in Class 6 of this Plan.

Disallowed Claim - shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

Distribution - means a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims and Equity Interests pursuant to the Plan.

Distribution Date - means: (a). for Claims that are not disputed, thirty (30) days after the Effective Date; and (b). for Disputed Claims, thirty (30) days after the later of the Effective Date or the entry of a Final Order resolving each Disputed Claim. Notwithstanding the foregoing, the Disbursing Agent shall be authorized to make Distributions at his discretion and in conformity with this Plan immediately upon the occurrence of the Effective Date.

Disputed Claim - shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

<u>Executory Contracts</u> - shall mean any Pre-petition Unexpired Lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

<u>Filing Date (or Petition Date)</u> - shall mean February 4, 2024, the date Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

<u>Final Order</u> - shall mean an order or judgment of a Court, including the Bankruptcy Court, which has become final in accordance with applicable law, and which has not been stayed pending appeal.

<u>General Unsecured Creditor Fund</u> - the cumulative amounts shown on Exhibit "B" attached hereto and identified as "Yearly Disposable Income Calculation". The amount shown is for one 12-month time period. Therefore, the total fund is projected to be 3 times this amount unless the Plan is modified.

<u>Holder</u> - shall mean the owner of any Claim or Interest, or the Person entitled to pursue the owner's rights thereunder.

<u>Interest</u> - shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

<u>Insider</u> - has the definition ascribed to it under §101(31) the Bankruptcy Code.

<u>Litigation Claims</u> shall mean any and all claims and causes of action of any kind or nature asserted, or which may be asserted, by or on behalf of the Debtor or the Debtor's Estate arising under federal or state law which have not been released pursuant to this Plan or separate order of the Bankruptcy Court, including, but not limited to, claims which are asserted herein at any time in an Adversary Proceeding, a counter-claim, defense, or offset to a claim against the Bankruptcy Estate, or claims listed on Schedule B of the Debtor's Schedules filed in the Bankruptcy Case (whether such claims are currently listed or listed on an amended Schedule B filed prior to the entry of a final decree in this case), and any and all claims arising under or pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date. Debtor expressly reserves all usury claims as a defense or counter-claim to the assertion of a Claim by a Creditor in this case. These claims include the potential claims for defamatory statements concerning Debtor which were made by Bexar County and its representatives and published in a front page article in the San Antonio Express News on February 12, 2024.

<u>Lien</u> - shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

Person - means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

Petition Date – means February 4, 2024.

Plan - shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

Priority Non-Tax Claim - means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

Priority Tax Claim - means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

Professional - means any person employed in the Chapter 11 Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise, and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b) of the Bankruptcy Code.

Professional Fee Claim - means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Filing Date and prior to and including the Effective Date.

Proof of Claim – means the document evidencing sums owed to a Creditor which are filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002, and which appear of record in the claim register for the Debtor's Bankruptcy Case.

Property or Property of the Estate - means all assets of Debtor which are property of the Estate pursuant to Section 541 of the Bankruptcy Code.

Pro-Rata – when used in the context of a cash payment to Holders of Allowed Claims in a particular Class, Pro Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class. When used in the context of an Equity Interest, Pro Rata shall mean the proportion that the Equity Holder(s)' share bears to the aggregate amount of all Equity Interests.

Reorganized Debtor - means the entity that will continue to manage the Debtor's operations after the Effective Date.

Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff

under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.02   <u>Effective Date of Plan</u>. The effective date of this Plan is the fifteenth business day following the date of the entry of the order of confirmation.  However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03   <u>Severability</u>. If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.04   <u>Binding Effect</u>.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, and the successors or assigns of such entity.

8.05   <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06   <u>Controlling Effect</u>.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07   <u>Revocation, Withdrawal, or Non-Consummation; No Admissions</u>.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such

Debtor or any other Person,(ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person with respect to any matter set forth in the Plan, including liability on any Claim.

8.08    <u>Corporate Governance</u>.    Pursuant to § 1123(a)(6) of the Code, Debtor shall provide for the inclusion in its charter of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

8.09    <u>Notices</u>.  Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtor:**
Larry P. Oliver
7538 Fair Oaks Pkwy
Boerne, TX 78015
Email:  larryoliver@reagan.com

**with a copy to:**
H. Anthony Hervol
Law Office of H. Anthony Hervol
22211 IH-10 West, Suite 1206-168
San Antonio, Texas 78257
Fax:  (210) 522-0205
Email: hervol@sbcglobal.net

**If to the Subchapter V Trustee:**
Eric Terry
3511 Broadway
San Antonio, Texas 78209
E-Mail: eric@ericterrylaw.com

8.10    <u>Distributions</u>. To the extent an Allowed Claim has not been paid in full prior to the Effective Date, the Debtor shall make all Distributions required under the Plan through its Disbursing Agent.  Upon the making of any distribution in accordance with the provisions of this Plan to Holders of Allowed Claims, the Debtor and its Disbursing Agent shall have no further obligations or liability to any party with respect to such Distribution.

8.11    <u>Distributions Upon Allowance of Disputed Claims</u>. The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive a

Distribution as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order or by agreement of the parties. Such Distributions shall be made in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.

8.12    Undeliverable and Unclaimed Distributions.

(a). Holding of Undeliverable and Unclaimed Distributions. If the Distribution to any Holder of an Allowed Claim is returned to the Debtor or the Disbursing Agent as undeliverable or is otherwise unclaimed, no more Distributions shall be made to such Holder unless and until the Debtor or the Disbursing Agent are notified in writing of such Holder's then current address.

(b). After Distributions Become Deliverable. The Debtor or the Disbursing Agent shall make all Distributions that have become deliverable or have been claimed since the Distribution Date as soon as reasonably practicable after such Distribution has become deliverable.

(c). Failure to Claim Unclaimed/Undeliverable Distributions. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed Distribution within ninety (90) days after the Distribution Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claim against the Debtor, its Estate, the Disbursing Agent or their property.  In such cases, the funds represented by such undeliverable or unclaimed Distribution and any subsequent Distribution on account of such forfeiting Claimant's Allowed Claim(s) shall be distributed to the other Creditors holding Allowed Claims in this case (but only up to the full amount of their Allowed Claims) and to the Equity Interest Holders in the order set forth in the classification scheme noted herein.

8.13    Means of Cash Payment. Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Debtor or the Disbursing Agent.

8.14    Delivery of Distribution. Except as otherwise set forth in this Plan, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Disbursing Agent, or (c) if no Proof of Claim has been Filed and the Debtor or the Disbursing Agent have not received a written notice of a change of address, at the addresses reflected in the Schedules, if any.

# ARTICLE IX
## DISCHARGE

     9.01   <u>Discharge.</u>  If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

     If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

     9.02   <u>Effect of Confirmation of the Plan</u>.

     <u>Legally Binding Effect</u>. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtor. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

     **A.**    **No Creditor of the Debtor shall be permitted to collect upon any Claims against the Debtor in any manner other than as provided for in the Plan.**

     **B.**    **To the extent this Plan provides for payment in full of the Allowed Claim of a particular Creditor, a temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding by such Creditor against any affiliate, responsible person, guarantor, manager, member, equity holder, officer or director of the Debtor, that otherwise would be liable to such Holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtor is not in default of the payment terms of such Claim as provided herein.  Further, the statute of**

**limitations against any such third party shall be suspended during the period the Plan payments are not in default.**

<u>Injunction</u>. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor and its assets and properties and any proceedings not yet instituted against the Debtor or its assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or its property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the property of the Debtor or the Estate with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor or the Estate except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

<u>Exculpation</u>. Neither the Debtor or Reorganized Debtor, or any of their respective partners, general partners, members, officers, directors, employees, agents, advisors or Professionals have or may incur any liability to any Holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No Holder of a Claim, Equity Interest or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, Reorganized Debtor, or any of their respective partners, general partners, officers, directors, members, employees, agents, advisors or Professionals for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

<u>Continuation of Anti-Discrimination Provisions of Bankruptcy Code</u>. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or

because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## RETENTION OF JURISDICTION

10.01. <u>Exclusive Jurisdiction of Bankruptcy Court</u>. Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a). allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

(b). grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan;

(c). hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

(d). determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e). ensure that all distributions to Holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of this Plan;

(f). construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the

maintenance of the integrity of this Plan in accordance with Sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(g). determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(h). modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

(i). issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(j). enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k). determine any other matters that may arise in connection with or relating to this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(l). determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m). hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(n). enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(o). determine and resolve controversies related to the Estate or the Debtor from and after the Effective Date;

(p). hear and determine any other matter relating to this Plan; and

(q). enter a final decree closing this Chapter 11 Case.

## ARTICLE XI
## OTHER PROVISIONS

11.01   The Trustee. The trustee appointed under section 1183(a) of the Bankruptcy Code ("Trustee") will have appropriate access to the management, books and records and professionals of the Company to evaluate the Plan. The Trustee's term is anticipated to end upon substantial consummation of the Plan. As permitted by section 1194(b) of the Bankruptcy Code, the Plan provides that the Debtor, and not the Trustee, will make all required payments under the Plan, thus resulting in administrative cost savings. However, unless otherwise specifically provided herein or in an Order confirming this Plan, the Subchapter V Trustee shall be the Disbursing Agent for sums due to Creditors holding Allowed Claims in Class 6 of this Plan if the case is confirmed as a non-consensual Plan.  The Trustee shall make his required filings to discharge his duties.

11.02   Modification of the Plan. The Debtor may propose amendments or modifications to this Plan at any time prior to the date of the entry of the Order Confirming Plan, subject to the requirements set forth in 11 U.S.C. §1193(a).  After any amendments or modification to the Plan are filed with the Court, the Plan as modified shall become the Plan.  The Debtor may seek to modify the Plan after confirmation, subject to the requirements set forth in 11 U.S.C. §1193(b) – (d).

11.03   Vesting of Estate Property and Effect of Default. If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

In the event the Debtor's Plan is confirmed under § 1191(b), all property of the estate shall remain vested in the estate until the Debtor completes all of the payments under the Plan and a discharge is entered herein.  In addition, property of the estate shall include all property identified in 11 U.S.C. §1186.

11.04.   Retention and pursuit of claims.  Any and all Litigation Claims owned by, accruing to or assertable by the Debtor shall remain assets of the Debtor's bankruptcy estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, only the Debtor shall have the right to pursue or not to pursue, or, subject to the terms of this Plan, compromise or settle any Litigation Claims owned or held by the Debtor or its Estate as of the Effective Date. From and after the Effective Date, the Debtor may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Debtor after the Effective Date. Other than as set forth herein, no other Person may pursue such Litigation Claims after the Effective Date.  The Debtor may pursue Litigation Claims without the need for filing any motion seeking authority to do the same.  Furthermore, any attorney-client privilege, work-

product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also continue to exist for the benefit of the Debtor and shall vest in the Debtor and its representatives, and shall also be preserved for and as to the Debtor. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after confirmation of the Plan and the Effective Date.

11.05.  <u>Default</u>.  Except as otherwise provided for in this Plan, in the event of an alleged default by the Reorganized Debtor under the Plan, any party alleging such default shall provide written notice of the default (the "Default Notice") to the Reorganized Debtor and Debtor's counsel at the addresses set forth in Section VIII of the Plan.  Reorganized Debtor shall have thirty (30) days from receipt of the Default Notice to cure any actual default that may have occurred.  Reorganized Debtor reserves the right to dispute that a default has occurred and shall notify the party alleging the default that Reorganized Debtor contends no default has occurred, with such notice to be sent within the thirty (30) day time-period following receipt of the Default Notice.  In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default.  In the event Reorganized Debtor fails to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights against the Debtor under any and all applicable bankruptcy and/or non-bankruptcy laws.

11.06  <u>General Provisions – Internal Revenue Service</u>.  The following provisions apply to the Allowed Claim of the Internal Revenue Service:  The debt owed by the Debtor to the Internal Revenue Service is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code.  If the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default.  A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month. If there is a default, the Internal Revenue Service must send a written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim( s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire c1aim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority. The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.  The Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtor is

required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service. If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The Internal Revenue Service must send a written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter. If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.  Internal Revenue Service remedies upon default: Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

    11.07  Governing Laws. The Plan shall be governed by the laws of the State of Texas and the laws of the United States, as may be applicable.

Dated this 6th day of May, 2024.

                    Respectfully submitted,

                    Trinity Pharmacies, LLC

                    By*: /s/ Larry Oliver*_____
                        Larry P. Oliver, its CEO and authorized
                        representative

                    Law Office of H. Anthony Hervol

                    By:*/s/ H. Anthony Hervol*_____
                        H. Anthony Hervol
                        Attorney for Trinity Pharmacies, LLC, Plan
                        Proponent

Derived from Official Form 425B (12/17)

## Exhibit "A" – Liquidation Analysis

### *Plan Proponent's Estimated Liquidation Value of Assets*

**Assets***

| | |
|---|---|
| a. Cash on hand | $ 23,140.23 |
| b. Security deposits | $        0.00 |
| b. Accounts receivable | $ 188,355.01 |
| c. Inventory | $   49,733.31 |
| d. Furniture, fixtures & equipment | $   13,796.16 |
| e. Other machinery & equipment | $   38,000.00 |
| e. Automobiles (Trailer) | $        0.00 |
| f. Building & Land | $        0.00 |
| g. Customer list | $        0.00 |
| h. Investment property (e.g. stocks, bonds, investments) | $        0.00 |
| i.  Intellectual property rights | $ |
| j.  Lawsuits or other claims against third-parties | $    unknown |
| k. Other property to be surrender to lienholders | $        0.00 |
| l.  Other intangibles (such as avoiding powers actions) | $        0.00 |
| ***Total Assets at Liquidation Value*** | **$ 313,024.71** |

*Asset values listed in Schedules

**Less:**
| | |
|---|---|
| Sales expenses on hard assets (15% commission) | $     7,769.42 |

**Less:**
| | |
|---|---|
| Secured creditors' recoveries | $   331,054.12 |

**Less:**
| | |
|---|---|
| Chapter 7 trustee fees and expenses (assumes secured Creditors would allow Trustee to liquidate assets) | $    13,640.74 |

**Less:**
| | |
|---|---|
| Chapter 11 administrative expenses (estimate) | $   10,000.00 |

**Less:**
| | |
|---|---|
| Priority claims, excluding administrative expense claims | $     4,538.36 |
| **[Less:** Debtor's claimed exemptions – N/A] | |

| | |
|---|---|
| (1) Balance for unsecured claims | $   -53,977.93 |
| (2) Total dollar amount of unsecured claims (as scheduled and filed, including undersec'd claims) | $     72,223.33 (plus unliquidated claim of Bexar County) |

### *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation*:

0%

### *Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*

47.91%

(Based upon liquidated unsecured claims filed, but subject to dilution by any amounts allowed on Bexar County claim)

**Exhibit "B"**
Projections of Cash Flow and Earnings for Post-Confirmation Period

| Trinity Pharmacies, LLC - Plan Budget | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | |
| 4010 Sales | 300000 | 300000 | 290000 | 290000 | 300000 | 275000 | 315000 | 285000 | 300000 | 290000 | 300000 | 300000 |
| | | | | | | | | | | | | |
| **Total Income** | 300000 | 300000 | 290000 | 290000 | 300000 | 275000 | 315000 | 285000 | 300000 | 290000 | 300000 | 300000 |
| | | | | | | | | | | | | |
| **Cost of Goods Sold** | | | | | | | | | | | | |
| 5010 Purchases – Resale Items | 79000 | 79000 | 77000 | 77000 | 79000 | 73000 | 82000 | 77000 | 79000 | 77000 | 79000 | 79000 |
| 5020 Freight and Delivery Costs | 75000 | 75000 | 72000 | 75000 | 75000 | 75000 | 75000 | 75000 | 72000 | 75000 | 75000 | 75000 |
| | | | | | | | | | | | | |
| **Total Cost of Goods Sold** | 154000 | 154000 | 149000 | 152000 | 154000 | 148000 | 157000 | 152000 | 151000 | 152000 | 154000 | 154000 |
| | | | | | | | | | | | | |
| **GROSS PROFIT** | 146000 | 146000 | 141000 | 138000 | 146000 | 127000 | 158000 | 133000 | 149000 | 138000 | 146000 | 146000 |
| | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | |
| 5026 Pharmacy First Collection Svc | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 | 310 |
| 6010 Advertising and Promotion | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| 6020 Automobile Expense | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| 6050 Building Repair | 250 | 250 | 0 | 250 | 250 | 250 | 250 | 250 | 0 | 250 | 250 | 250 |
| 6080 Computer and Internet Expenses | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 | 6329.65 |
| 6120 Dues and Subscriptions | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Expense Reimbursements | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| 6161 Health Insurance – Partner | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 | 565.5 |
| 6170 Life and Disability Insurance | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 | 663.82 |
| Liability Insurance | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 | 1367 |
| 6210 Meals and Entertainment | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 | 1250 |
| 6220 Merchant Account Fees | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 | 2170.94 |
| 6223 Miscellaneous | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| 6230 Office Supplies | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| 6270 Professional Fees | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Tax Preparation Fees | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 |
| 6280 Rent Expense | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 |
| 6310 Property Taxes | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 | 1,134.00 |
| On Deck Capital pymt | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| 6320 Telephone Expense | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 | 2518.76 |
| Training and Travel Expense | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 |
| 6340 Utilities | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 | 434.95 |
| 6350 Equipment Rental | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 | 1387.7 |
| Xxxx Equipment Purchase (Americorp) | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 | 2309.81 |
| Payroll Expenses | | | | | | | | | | | | |
| **Company Contributions** | | | | | | | | | | | | |
| Health Insurance | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 | 3296.75 |
| Total Company Contributions | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 | 3,296.75 |
| Taxes | 4887.5 | 4887.5 | 6330.86 | 4887.5 | 4887.5 | 4887.5 | 4887.5 | 4887.5 | 6330.86 | 4887.5 | 4887.5 | 4887.5 |
| Wages | 93692.16 | 93692.16 | 127461.32 | 93692.16 | 93692.16 | 93692.16 | 93692.16 | 93692.16 | 127461.32 | 93692.16 | 93692.16 | 93692.16 |
| Unemployment Taxes (Fed/State) | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 | 125.33 |
| Total Payroll Expenses | 101,876.41 | 101,876.41 | 134,895.25 | 101,876.41 | 101,876.41 | 101,876.41 | 101,876.41 | 101,876.41 | 134,895.25 | 101,876.41 | 101,876.41 | 101,876.41 |
| Total Expenses | 136,410.54 | 136,410.54 | 169,179.38 | 136,410.54 | 136,410.54 | 136,410.54 | 136,410.54 | 136,410.54 | 169,179.38 | 136,410.54 | 136,410.54 | 136,410.54 |
| **NET INCOME** | 9,589.46 | 9,589.46 | -28,179.38 | 1,589.46 | 9,589.46 | -9,410.54 | 21,589.46 | -3,410.54 | -20,179.38 | 1,589.46 | 9,589.46 | 9,589.46 |

| Payments By Class: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1:  Insiders - N/A | | | | | | | | | | | |
| Class 2:  Bexar County (Prop. Tax - see above) | | | | | | | | | | | |
| Class 3: Americorp (see above) | | | | | | | | | | | |
| Class 4: On Deck Capital (see above) | | | | | | | | | | | |
| Class 5: American Bank (pd by 3rd pty) | | | | | | | | | | | |
| Class 6: General unsecured | | | | | | | | Yearly Disposable Income Calculation: | | | 11,535.84 |
| | | | | | | | | | | | |